■ LEO HAVILAND, Appellant-Respondent, v J. ARON & Co., Respondent-Appellant. [622 NYS2d 703] —Order of the Supreme Court, New York County (Leland DeGrasse, J.), entered on or about February 10, 1994, which granted defendant J. Aron & Co.'s motion to dismiss the first two causes of action alleging fraud and conspiracy to commit fraud, and which denied its motion to dismiss with respect to the remaining causes of action based on tortious interference with contract and tortious interference with prospective economic advantage, unanimously modified, on the law, to the extent of dismissing the

action in its entirety and, except as so modified, affirmed, without costs.

The complaint alleges that plaintiff Haviland was hired as a commodities broker by Goldman Sachs & Co. (Goldman) immediately upon his graduation from Cornell Law School in 1979. While employed as a commodities broker trading in energy futures, plaintiff had no prior experience in this field and maintains that he was hired because of his legal expertise, which Goldman utilized. Plaintiff eventually rose to become the head of Goldman's energy futures group. Goldman participated in the energy markets both as broker and principal, trading through its close affiliate, defendant J. Aron & Co. Because of the conflict of interest that might arise should J. Aron & Co. learn the positions taken by Goldman's clients in the commodities futures market, a "Chinese Wall" was established between J. Aron & Co. and the energy futures group that Haviland headed. The complaint asserts that Haviland was repeatedly told that a breach of confidentiality would result in his dismissal.

It is plaintiff's position that these representations were made to induce him to remain in Goldman's employ and that, in reliance thereon, he did not seek to avail himself of unspecified alternative employment opportunities. Plaintiff charges that Goldman and J. Aron's officers later demanded that he "coordinate" the energy futures group with that of defendant J. Aron. Plaintiff alleges that he was eventually fired for refusing to breach the confidentiality of his clients by disclosing their trading positions.

The complaint does not allege that plaintiff was hired under a contract specifying a definite term of employment. It is plaintiff's theory that, by imposing the condition of confidentiality, defendant somehow transformed his capacity from an employee at will to one engaged for a definite term. This proposition is unsupported by authority and entirely without merit. A contract does not arise simply because an employer requires an employee to abide by certain rules as a condition of his retention. Nor does an employer commit fraud upon an employee because it fails to abide by its own rules. As has already been pointed out in this dispute, "Haviland could have left Goldman at any time during the alleged scheme to defraud with his reputation and job prospects intact" (*Haviland v Aron & Co.,* 796 F Supp 95, 100, *affd* 986 F2d 499).

Plaintiff's reliance on *Wieder v Skala* (80 NY2d 628) is misplaced. Plaintiff was hired as a broker, not as a lawyer.

Any professional services he may have rendered to defendant (or to Goldman) were not "at the very core * * * of his association with defendant[ ]" *(supra,* at 635) and are not sufficient to bring plaintiff's employment within the narrow exception of that case. It is well established that employment in this State, unless under a contract having a definite term, is at will and "may be freely terminated by either party at any time for any reason or even for no reason" *(Murphy v American Home Prods. Corp.,* 58 NY2d 293, 300). Because there is no contract of employment, there can be no tortious interference with a contractual relationship *(see, Huebener v Kenyon & Eckhardt,* 142 AD2d 185, 193). Concur—Wallach, J. P., Rubin, Asch, Nardelli and Tom, JJ.